Manuel H. Miller, Esq. (SBN 36947)
LAW OFFICE OF MANUEL H. MILLER
A Professional Corporation
16133 Ventura Boulevard, Suite 700
Encino, CA 91436
Tel: (818) 710-9993
Email: miller4law@msn.com

Attorney for Defendant
MICHAEL SANCHEZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL SANCHEZ,<br><br>Defendant. | Case No.: 2:23-cr-00299-MCS<br><br>*Hon. Mark C. Scarsi, Judge Presiding*<br><br>**DEFENDANT MICHAEL SANCHEZ'S SENTENCING MEMORANDUM**<br><br>**Sentencing Hearing Date:**<br>**Date: June 23, 2025**<br>**Time: 3:00 p.m.**<br>**First Street Courthouse,**<br>**350 W. 1st Street, Courtroom 7C** |

TO: THIS COURT AND THE UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA:

COMES NOW the Defendant, MICHAEL SANCHEZ ("Defendant"), by his counsel Manuel H. Miller, Esq. who hereby submits the following Sentencing Memorandum:

**Nature and Circumstance of the Offense and Subsequent Plea**

On April 2, 2025, Defendant Michael Sanchez (hereinafter "Defendant" and/or "Sanchez") pled guilty to a single count (count 6) of a 10-count First Superseding Indictment in which he is solely named. As set forth in the plea agreement and referenced in the Presentence Report from the U.S. Probation Office, Count 6 charges that on November 15, 2023, Sanchez possessed with the intent to distribute approximately 81.47 kilograms of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). Defendant Sanchez was arrested on 11/15/2023 and has been in federal custody at MDC Los Angeles since his arrest.

Pursuant to the written plea agreement, the parties stipulated to a base offense level of 38, pursuant to USSG §§2D1.1(a)(5), (c)(1); a two-level increase for possession of firearm, pursuant to USSG §2D1.1(b)(1); and a two-level increase for maintaining a drug premises pursuant to §2D1.1(b)(12). The parties reserved the right to argue that additional specific offense characteristics, adjustments, and departures apply.

Moreover, pursuant to the plea agreement Mr. Sanchez further agreed to recommend to the Court in writing in his sentencing position as well as orally at the sentencing hearing that he be sentenced to a term of imprisonment of no less than 144 months; and not seek, argue, or suggest in any way, either orally or in writing, that the Court impose a term of imprisonment below 144 months. Further, by virtue

of the plea agreement the Government agreed to recommend up to a three-level reduction for acceptance of responsibility under USSG §3E1.1, and, at the time of sentencing, move to dismiss the remaining counts of the Indictment.

As further referenced in the Probation Department's presentence report, the probation officer had no information indicating the defendant impeded or obstructed justice. In addressing the topic of acknowledgement for acceptance of responsibility the presentence report referenced that on May 6, 2025, with counsel present, Mr. Sanchez was interviewed at Metropolitan Detention Center in Los Angeles, California wherein "*he agreed to the statement of facts found in the plea agreement*." The presentence report further acknowledges that *"the defendant has clearly demonstrated acceptance of responsibility for the offense*" and that "*the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty*."

Indeed, Defendant Sanchez – a dependable and conscientious father of two young sons - has accepted responsibility for his actions and is fully cognizant and remorseful for his participation in this criminal enterprise, as more particularly discussed below.

**History and Characteristics of the Offender**

Relevant Family History - Michael Sanchez is 30 years old and was born on August 3, 1994, in Granada Hills, California to Emma Shay and Jose Sanchez. As

confirmed in his interview for the presentence report, Mr. Sanchez stated that he has no knowledge about his own father because he simply "*got up and left*". Throughout his entire life, Mr. Sanchez estimates having seen him for only about a week in total. When Mr. Sanchez was 13, "*he reported that his father reappeared and asked for his help in obtaining his immigration documents, but Sanchez said he walked away from him*." Though Defendant Sanchez's mother Emma Chay mentioned that "*she told Sanchez's father he was welcome to visit his son anytime, as the door was always open for him. She gave him the chance, but he never took it.*"

The unfortunate circumstances of Defendant Sanchez's childhood and the absence of his father are compelling. As discussed in detail in the presentence report, Defendant Sanchez recalls that "*his mother used to take him to school, go to work, and come home around 8 p.m. Sometimes his grandparents would pick him up since he lived with them growing up. Sanchez stated that his mother was a "good mom who tried her best", but their relationship was difficult.*"

As addressed in the presentence report, "*although Sanchez said he did not grow up alone—since she he was surrounded by family living at his grandparent's house, including his mother's siblings and their children—he felt alone. In fourth grade, Sanchez was expelled for fighting. By sixth grade, he was already attending therapy because he was always angry and had behavioral issues at school and at home. During middle school, Sanchez continued to get into frequent fights*."

The presentence report further addresses that Mr. Sanchez "*then attended therapy for about three years because he was angry and struggling with many things in life, but mostly because he didn't have a father. Sanchez reported that he felt a lack of a strong father figure to guide him in the right direction. Sanchez recalls that his mother would be on the phone with her father, and he would try to tell him to behave, but Sanchez would grab the phone and hang up on him. Sanchez also attended therapy because of his relationship with his mother, feeling that his mother was never truly present, even though she was working*."

According to the statements of Defendant's mother Emma, she stated "*she did her best and always worked hard, but her son Sanchez who was a good calm child at first, began to change in middle school. Sanchez started getting into fights and eventually began therapy. Emma stated she tried to talk to him, but Sanchez was always very private and had a high impulsive attitude. Emma could only manage him to a certain extent. The therapist told Emma that Sanchez held a lot of anger toward his father*."

As confirmed in the presentence report, *"while growing up in his grandparents' home, Sanchez witnessed one of his uncles, Rocaele Chay, struggling with drug and alcohol abuse, and another uncle, Julio Chay, who was frequently involved in domestic violence incidents that brought police to the house. Sanchez recalls the home being filled with chaos and feeling like he was constantly blamed for*

*everything that went wrong in the household*."

Mr. Sanchez has two children, Jayden Sanchez, age 6, and Michael Sanchez, age 5, who live with their mother, Amber Bates. As confirmed in the presentence report, Mr. Sanchez reported that "*he was very involved in their lives, taking his children to school and picking them up every day. While Sanchez was working, he contributed financially to the household. However due to the current circumstances, he is no longer to provide the same support, and the children moved to Wisconsin with their mother, where living is more affordable for her*."

Mr. Sanchez's mother Emma shared with the probation officer that "*her grandchildren adore Sanchez and often ask when their daddy is coming home from school, not fully understanding the situation. Emma mentioned that they're also attending therapy, and it deeply saddens her.*" Mr. Sanchez also reported that his children are currently in therapy, as they are having a difficult time coping with being away from their father since he was such a constant presence in their lives. Mr. Sanchez's future goals are to reunite with his children, remain present in their lives, and to always be able to provide for them.

Letters of support for Mr. Sanchez from his mother, grandfather, grandmother and brother are attached hereto collectively as Exhibit "A" and incorporated by reference herein as though set forth in full.

Additionally, Defendant Sanchez denies that he was or is a gang member and

has never represented to others (or held himself out) to be a gang member. Defendant is informed and believes that no credible documents or records exist that can identify him as a gang member and Defendant maintains no gang tattoos.

Mental and Emotional Health and Substance Abuse Issues -

Mr. Sanchez reported no history of mental and emotional health issues, though he did admit to attending therapy when he was in middle school.

As also detailed in the presentence report, "*at age 15, Sanchez reported that he started drinking alcohol and using marijuana daily. At age 16, Sanchez tried ecstasy pills for the first time, and as an adult, he reported using them regularly. At age 17, Sanchez used cocaine occasionally and tried methamphetamine approximately five to six times. Sanchez reported that alcohol and ecstasy were the last controlled substances he used. He reported that alcohol is his substance of choice and has been the one that has caused him the most problems. Sanchez us interested in receiving substance abuse treatment.*"

Educational, Vocational and Special Skills - as reported in the presentence report, "*Sanchez's highest level of education completed is the 10th grade. Sanchez attended three different high schools—San Fernando High School, Discovery Charter School, North Valley Occupational Center—but did not graduate due to frequent trouble and involvement in fights at school. In 2016, Sanchez obtained his Occupation Safety Hazard License (unverified).*"

Employment Record – "*Since 2013, Sanchez has been working at UPS in Sylmar, California, on and off over the past 10 years. Sanchez was earning $22 an hour, making approximately $3,000 a month. Sanchez is currently unemployed due to the current circumstances of the instant offense.*"

**Defendant's Position Regarding the Advisory Guideline Range**

The PSR prepared by U.S. Probation calculates Defendant's criminal history and the Advisory Guideline Range referenced on pages 7-9 of the PSR, as follows:

**Impact of Plea Agreement**

Criminal History:

**Juvenile Adjudication(s)**
46. None.

| **Adult Criminal Conviction(s) Date of Arrest** | | **Conviction/Court** | **Date Sentence Imposed/Disposition** | **Guideline** | **Pts** |
|---|---|---|---|---|---|
| 47. | 12/03/2015 (Age 21) | 459 PC: Burglary/ First Degree (Fel.); Los Angeles Superior Court; Case No. PA085221 | 05/02/2016: 2 years prison | 4A1.1(a) 4A1.2(e)(1) | 3 |

**Criminal History Computation**
48. The total criminal history score is three. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of three establishes a criminal history category of II.

**Other Criminal Conduct**
49. None.

//
//

Regarding the Advisory Guideline Range, it was stated:

**Count 6**: **Possession with Intent to Distribute Methamphetamine**

**Base Offense Level:** The guideline for a violation of 21 U.S.C. § 841(a)(1) is USSG §2D1.1. According to USSG §2D1.1(a)(5), the base offense level is the offense level specified in the Drug Quantity Table set forth in USSG §2D1.1(c). Pursuant to USSG §2D1.1(c).

27. Pursuant to USSG §§2D1.1(a)(5) and (c)(1), the base offense level is 38 if the offense involved 4.5 kilograms or more of methamphetamine (actual). Since the instance offense involved 129.01 kilograms of methamphetamine (actual),[1] the base offense level is 38. **38**

28. **Specific Offense Characteristics:** Pursuant to USSG §2D1.1(b)(1), there is a two-level increase if a dangerous weapon (including a firearm) was possessed. **+2**

33. Here, Sanchez was using his residence in Northridge, California to store and package drugs prior to shipping the parcels for distribution. He further transferred the drugs to coconspirators for mail inside of his garage at this residence. As such, a two-level increase applies. **+2**

34. **Victim Related Adjustment:** None. **0**

35. **Adjustment for Role in the Offense:** None. **0**

36. **Adjustment for Obstruction of Justice:** None. **0**

37. **Adjusted Offense Level (Subtotal):** **42**

38. **Chapter Four Enhancement:** None. **0**

39. **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). **-2**

40. **Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b). **-1**

41. **Zero-Point Offender Reduction:** **0**

42. **Total Offense Level:** **39**

**Offense Behavior Not Part of Relevant Conduct:**
43. None.

As discussed below, Defendant Sanchez has accepted responsibility for his actions and is fully cognizant and remorseful for his participation in this criminal enterprise.

**Defendant Sanchez's Cooperation With Law Enforcement -** The record reflects that Defendant Sanchez has been demonstrably forthright in his cooperation with the investigating agents from the outset of his inital detention and arrest that occurred at the traffic stop conducted by the LAPD near his home in Pacoima on February 27, 2022, and thereafter with the Office of the U.S. Attorney with a proffer statement on October 9, 2024 - all with his acknowledgement and acceptance of responsibility.

Defendant forthrightly informed the officers of the presence of the gun and cooperated during the referenced traffic stop of February 27, 2022. As set forth in the presentence report:

> "17. Due to Sanchez's actions upon the initiation of the traffic stop and his overly nervous demeanor, officers asked Sanchez to exit the vehicle. Officers asked Sanchez if there was anything inside the vehicle that should not be there such as weapons, drugs, other dangerous contraband. *Sanchez told the officers that his personal gun was inside the vehicle, which he used for personal protection. The officers then asked if he had a permit to carry a concealed firearm, and Sanchez stated he did not*."

Mr. Sanchez further participated in a lengthy, open and honest proffer statement with the U.S. Attorney's office in Los Angeles with the AUSA and the

underlying investigating agents on October 9, 2024.

**Kimbrough Variance**

Defendant Sanchez also suggests that for purposes of ordering a sentence of 144 months, the application of *Gall v. United States*, 128 S.Ct. 586 (2007) and U.S.C. Section 3553(a), in which drug quantity should not be the loadstar or driver for the sufficient but not greater than necessary sentence of 144 months.

The district court has authority to disagree with drug quantity Guidelines based upon policy disagreement with U.S. Sentencing Commission determinations. See *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)(recognizing the district courts' authority to vary from the crack cocaine Guidelines based on policy disagreement, not simply based on an individualized determination that they yield an excessive sentence in a particular case.)

Drug quantity or quality, while a fixture in the Guidelines under Section 2D1.1, is not always an indicator of a defendant's role, measure of culpability, likelihood to re-offend or necessarily dictate a higher sentencing under general and specific deterrence factors. See generally, *United States v. Nawanna*, 2018 WL 2021350 (N.D. Iowa 2018); *United States v. Harry*, 313 F.Supp. 3d 969 (N.D. Iowa 2018); *United States v. Pereda*, 2019 WL 463027 (D. Colo. 2019); *United States v. Carrillo*, 440 F.Supp. 3d 1148 (E.D. Cal. 2020); *United States v. Rodriquez*, 382 F.Supp.3d 892, 894 (D. Alaska 2019).

The court in *United States v. Hayes*, 948 F.Supp. 2d 1009 (N.D. Iowa 2013). further addressed other case analysis discussing concerns with the Guidelines system, stating "the Guidelines' quantity-driven, "market-oriented" approach is not a proxy for culpability in every case, nor does it always correlate to the purposes of sentencing under 18 U.S.C. § 3553(a).

The *Hayes* court also discussed the topic of "false uniformity" - stating that "false uniformity occurs when we treat equally individuals who are not remotely equal because we permit a single consideration, like drug quantity, to mask other important factors. The court in *Hayes* concluded by stating that "*I find that I have the discretion to vary from the Guidelines range for methamphetamine offenses and a variance is appropriate. I am placing less weight on the Guidelines range because of my fundamental policy disagreement with the Guidelines range for methamphetamine drug-trafficking offenses. A sentence pursuant to the Guidelines range would be greater than necessary to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a)."*

As also referenced in the U.S. Probation officer's presentence report:

*"104. Pursuant to 18 U.S.C. § 3553(a), the Court, in determining the particular sentence to be imposed, shall consider, among other factors, the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct, and the need to avoid unwarranted*

*sentence disparities among defendants with similar records who have been found guilty of similar conduct."*

*"105. Factors in mitigation related to the history and characteristics of the defendant that are not considered or may not be adequately taken into account by the Guidelines include Sanchez's history of untreated substance abuse for which he is amenable to treatment, that his one prior sentence was for two years of imprisonment, and his challenging personal history.*"

Accordingly, all factors in this situation suggest that Mr. Sanchez will prove to be worthy of a "fresh start" if given that chance so that he may resurrect his role as a responsible and loving father to his sons. He has accepted responsibility for his actions and is fully cognizant and remorseful for his participation in this criminal enterprise. Accordingly and in the interests of justice Mr. Sanchez states that a sentence of 144 months would constitute a sufficient but not greater than necessary sentence in this case when applying all Section 3553(a) factors, consistent with the considerations of the subject plea agreement.

**DATED: June 8, 2025**

**Respectfully submitted:**

LAW OFFICES OF MANUEL H. MILLER, APC

*Manuel H. Miller*

Counsel for Defendant Michael Sanchez

# EXHIBIT A

EXHIBIT A

**Emma Chay**
10309 Haddon Ave
Pacoima, CA 91331

4th June 2025

Dear To Whom This may concern,
I was a single mother when Michael Sanchez was born. I had my mom and dad support while I was working a full time job to support my son until he grew up and started going to school. I have to change jobs to go to work and get out early so I can pick up from school and spend more time with him and help him with the homework. I know it was very hard for him to grow up with no dad by his side but I always tried to be there for him. Michael was always a quiet kid but when he saw other kids he liked to play with them and he was very kind with the other kids and he liked to share his toys. When Michael started school he was a very disciplined kid always getting awards by the time he got to middle school he started to change his behavior and start doing therapy, playing basketball was his favorite sport. He never talks about his feelings with me and prefers to keep to himself. I always tried to talk to him when he was upset about little things but sometimes I would try to leave him alone until he decided to talk to me. Michael has always been a good young man and he was never a gang member and started working at ups for seasonal for christmas. He got along with everyone he worked with and they gave him good references about his development in his work and he got a part time job. Michael was living with me for 26 years until he decide to move to do his life with his kids and girlfriend but we always have communication with him like mom I am very disappointed about his action and I feel I didn't do good job to raise him but I feel he need another opportunity to be with his kids and tried to fix his life to make better life for him and his kids .

Sincerely,

Emma Chay

**Juan Chay**
10309 Haddon Ave
Pacoima, CA 91331

4th June 2025

Dear To Whom This may concern,

I am Michael's Grandfather. Michael has always lived with us when he was younger and we loved him. My wife and I would help our daughter with him. I was one of the only father figures in his life and I would try my best to give him the love he deserved. The more he grew the more I saw him become a man. He was always working when he lived with us. After he found his partner and decided to move out we didn't really talk much but he did check in. I feel sorry and disappointed because of what happened. I didn't know what he was doing. We would call him and he would come visit us with the kids and say everything was okay. I will always love my grandson but I am disappointed in what happened and hope he learns and becomes a better person not only for himself but for the kids.

Sincerely,

Juan Chay

**Feliza Chay**
10309 Haddon Ave
Pacoima, CA 91331

4th June 2025

Dear To Whom This may concern,

Growing up my grandson Michael was a well behaved and studious child. I always took him to school. My husband and I took care of him when he was younger. The more he grew up the more he did start to change in behavior and I did notice that. Michael left the house at 26 years old. He would come to visit time and time again but I didn't really know what he was doing. I love my grandson and am disappointed in what happened but I hope he gets another chance for his kids.

Sincerely,

Feliza Chay

**Sebastian Gonzalez**
10309 Haddon Ave
Pacoima, CA 91331

4th June 2025

Dear To Whom This may concern,

My brother has always been a good hearted person. Despite everything that happened his intentions were protecting his family. Growing up my mom was always working so we would stay with our grandparents. I also had my dad take care of me sometimes and would also take care of Michael. My Dad always treated Michael like his son. My grandpa would also care more for Michael because of his situation. As a brother he helped me when I needed it. Even though we would have our ups and downs we would always forget what happened and act like nothing happened. When my nephews were born I hardly saw him because he was focused on his family. He would check in sometimes but never really said anything. We are all disappointed in what happened but I know that now that this happened I feel like he would turn a new leaf.

Sincerely,

Sebastian Gonzalez

# CERTIFICATE OF ELECTRONIC SERVICE

The undersigned certifies that I am employee of Law Offices of Manuel H. Miller and is the person of such age and discretion as to be competent to serve papers.

That on June 9, 2025, I served an electronic copy of the above and foregoing: **DEFENDANT MICHAEL SANCHEZ'S SENTENCING MEMORANDUM** by electronic service (ECF) to the person named below:

**For the United States of America**
Alexander Tran, Assistant United States Attorney
United States Attorney's Office | Central District of California
312 N. Spring St. | Los Angeles, California 90012
T: 213.894.0758 | alexander.tran@usdoj.gov

/s/ *Maryam Rance*
An employee of Law Office of
Manuel H. Miller APC